UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Radisson Hotels International, Inc.,      Case No. 19-cv-1176 (WMW/BRT)

    Plaintiff,

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

v.

Fairmont Partners LLC,

    Defendant.

---

This matter is before the Court on Plaintiff Radisson Hotels International, Inc.'s (Radisson Hotels) motion for default judgment against Defendant Fairmont Partners LLC (Fairmont Partners). (Dkt. 11.) For the reasons explained below, the Court grants Radisson Hotels' motion and awards Radisson Hotels consequential and liquated damages in the amount of $354,549.06, an injunction against Fairmont Partners, and attorneys' fees and costs in the amount of $15,810.90.

**BACKGROUND**

Radisson Hotels is a licensor of quality hotel systems, including the Radisson Hotel System of more than 80 hotels called "Radisson System" hotels. Radisson Hotels also owns the RADISSON marks, which include the trademarks and service marks associated with its Radisson Hotel System.[1] Organized under the laws of Delaware, Radisson Hotels' principal place of business is located in Minnetonka, Minnesota. Fairmont Partners is a

---

[1] The Court's use of the term "marks" in this Order is consistent with the term "Marks" as defined in Article 1 of the parties' license agreement.

1

Texas LLC. Its sole member, Willis Jerome Pumphrey, Jr., is a citizen and resident of Texas.

On December 15, 2015, Radisson Hotels and Fairmont Partners entered into a license agreement that granted Fairmont Partners a non-exclusive license to renovate and operate a Radisson System hotel in Sheffield, Alabama, for a period of 20 years. The license agreement also granted Fairmont Partners the right to terminate the agreement for cause by notice to Radisson Hotels, "effective 10 days after delivery." Radisson Hotels, in turn, received the right to terminate the agreement upon notice in the event of a default, such as when Fairmont Partners ceased to continuously operate the Radisson System hotel. The license agreement also provides that Fairmont Partners must comply with certain obligations upon the termination of the agreement, as described in section 20.1. The agreement is governed by Minnesota law.

On May 9, 2018, Fairmont Partners provided Radisson Hotels a notice of termination. By letter dated May 16, 2018, Radisson Hotels advised Fairmont Partners that Fairmont Partners failed to comply with the contractual requirements for exercising its right to terminate. Because of this failure, Radisson Hotels concluded, Fairmont Partners' purported termination is null and void.

In a separate letter, also dated May 16, 2018, Radisson Hotels terminated the license agreement, citing Fairmont Partners' failure to continuously operate the hotel as an "event of material default" that entitled Radisson Hotels to terminate the agreement. Radisson Hotels demanded that Fairmont Partners pay past-due royalty fees, marketing contribution

fees, and reservation fees in an estimated amount of $112,149.06, as well as liquidated damages in the amount of $242,400.

After terminating the license agreement, Radisson Hotels discovered that Fairmont Partners was operating a new hotel under the name The Shoals Hotel Sheffield at the site of the former Radisson System hotel. In operating its new hotel, Fairmont Partners continued to use and associate with Radisson Hotels' marks, including on the new hotel's Yelp webpage and Fairmont Partners' internet websites and directory listings.

On May 1, 2019, Radisson Hotels commenced this lawsuit, alleging breach of contract, trademark infringement, and unfair competition. Radisson Hotels seeks (1) consequential damages; (2) liquidated damages; (3) an injunction directing Fairmont Partners to cease using Radisson Hotels' marks; (4) a declaratory judgment that Fairmont Partners' purported termination of the license agreement on May 9, 2018, was null and void; (5) attorneys' fees and costs; and (6) treble damages and pre-judgment interest under the Lanham Act.

Radisson Hotels served the summons and complaint on Fairmont Partners on May 3, 2019. Fairmont Partners had 21 days, until May 24, 2019, to file an answer or otherwise respond to the complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), (b). That deadline passed without any response to the complaint. Radisson Hotels subsequently applied for an entry of default, which the Clerk of Court entered on June 4, 2019. (Dkts. 7, 10.) On August 9, 2019, Radisson Hotels filed a motion for default judgment, seeking an award of damages, injunctive relief, and attorneys' fees and costs. (Dkt. 11.)

**ANALYSIS**

To obtain a default judgment, a party must follow a two-step process. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Radisson Hotels sought an entry of default, which the Clerk of Court entered against Fairmont Partners on June 4, 2019. The entry of default is supported by the record, which reflects that Fairmont Partners was properly served with the complaint and summons and failed to answer or otherwise respond to the complaint. The first step of the process has been completed.

After the default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871; *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010).

Also, because Radisson Hotels seeks certain amounts of damages and attorneys' fees and costs, the Court must ascertain these amounts before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) ("[A] default judgment cannot be entered until the amount of damages has been ascertained.").

A party that is entitled to a default judgment must prove its damages to a reasonable degree of certainty.  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001).  A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly.  *Pope v. United States*, 323 U.S. 1, 12 (1944).

## I. Contractual Benefits

As Radisson Hotels maintains that the remedies it seeks are allowed under certain sections of the parties' license agreement, the issue before the Court is whether the parties' license agreement was enforceable when Radisson Hotels purported to exercise its termination right on May 16, 2018.  Under Minnesota law, a court's primary goal when interpreting a contract is "to ascertain and enforce the intent of the parties."  *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).  The parties' intent must be determined from the plain and ordinary meaning of the written agreement, in light of the agreement as a whole, so as to accord meaning to all of its provisions.  *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004); *Brookfield Trade Ctr., Inc. v. Cty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

The complaint alleges that Fairmont Partners purported to terminate the parties' license agreement on May 9, 2018.  Under section 19.1 of the agreement, which governs Fairmont Partners' right to terminate for cause, Fairmont Partners was required to give Radisson Hotels notice of termination effective 10 days after delivery.  Thus, even if Fairmont Partners' May 9, 2018 letter to Radisson Hotels was a valid notice of termination, the termination would have been effective on May 19, 2018.  As such, the license

5

agreement was enforceable by Radisson Hotels on May 16, 2018, when Radisson Hotels exercised its right to terminate. Moreover, under section 20.1 of the agreement, certain post-termination obligations of Fairmont Partners also would flow automatically from the termination of the license agreement "for any reason."

Accordingly, when the factual allegations in the complaint are accepted as true for the purpose of Radisson Hotels' motion for default judgment, a cause of action exists to enforce the terms of the parties' license agreement. Radisson Hotels, therefore, is entitled to a default judgment granting the benefits of its agreement with Fairmont Partners.

## II. Specific Monetary Awards

In its motion for default judgment, Radisson Hotels seeks damages, including consequential and liquidated damages, along with attorneys' fees and costs. Each type of relief sought is permissible under the terms of the license agreement. In support of its request for damages and attorneys' fees and costs, Radisson Hotels submits three declarations and several exhibits. The amount for each is addressed in turn.

### A. Consequential Damages

With regard to consequential damages, Radisson Hotels seeks the amount of past royalty fees, marketing contribution fees, and reservation fees, totaling $112,149.06. Radisson Hotels asserts that these amounts were due and owing at the time of contract termination. Section 20.1 of the license agreement provides that Radisson Hotels is entitled to receive "all amounts due and owing." Marketing contribution fees are amounts that Fairmont Partners, as the licensee, was required to pay towards a marketing fund that Radisson Hotels could use to market the brand. The reservation fees cover the costs to

Radisson Hotels of operating the online system and telephone system by which reservations could be placed in the Radisson System hotels. Exhibit F to the complaint and Exhibit 8 to the Wadholm Declaration itemize the past royalty fees, marketing contribution fees, and reservation fees. Because the amount sought is established with reasonable certainty, the Court grants Radisson Hotels consequential damages in the amount of past royalty fees, marketing contribution fees, and reservation fees due and owing as of May 17, 2018 (termination date), totaling $112,149.06.

### B. Liquidated Damages

As to liquidated damages, section 18.4 of the license agreement provides that, in the event of termination due to a default, the loss of prospective royalty fees and marketing contributions to Radisson Hotels "would be difficult if not impossible to ascertain." Accordingly, section 18.4 provides for liquidated damages in the amount of $242,400.

Under Minnesota law, liquidated-damages provisions are presumed valid. *Gorco Constr. Co. v. Stein*, 99 N.W.2d 69, 74 (Minn. 1959). The primary concern is "whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances." *Id.* Fairmont Partners operated the hotel beginning in the 1980s and, as a result, the revenue history predates the parties' entry into the license agreement in 2016. At the time of contract formation, the parties projected approximately $300,000 in annual royalty and marketing fees. Based on these projections, the parties negotiated and agreed to a flat fee of $242,400 as liquidated damages. On the date of termination of the license agreement, 17 years remained in the license term. In light of these facts, the contemplated liquidated-

damages amount of $242,400 is reasonable when viewed as part of the agreement as a whole and the nature of the damages contemplated.

Accordingly, the Court awards Radisson Hotels liquidated damages in the amount of $242,400 as provided by section 18.4 of the parties' license agreement.

### C.   Attorneys' Fees and Costs

Radisson Hotels seeks attorneys' fees in the amount of $15,116.50 and costs in the amount of $694.40, for a total of $15,810.90. Radisson Hotels maintains that it has incurred these amounts of attorneys' fees and costs while enforcing the contractual provisions relating to Fairmont Partners' post-termination obligations. Such fees and costs are expressly permitted under section 26.13 of the license agreement.

Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994). Minnesota courts enforce contractual obligations to pay attorneys' fees if the amount of fees allowed under the contract is reasonable. *Id.* An award of reasonable attorneys' fees and costs in the amount of $15,810.90 is proper here. The requested amount of attorneys' fees, $15,116.50, is based on 43.2 hours of legal services charged at hourly rates between $220 and $550. These rates are reasonable and comparable to the rates charged by law firms of similar size and stature in the Minneapolis legal market for attorneys with similar levels of experience. Exhibit 1 to the Konz Declaration and Exhibit 1 to the Konz Supplemental Declaration set forth in detail the attorneys' billings and the precise calculations of the amounts of attorneys' fees and costs, totaling $15,810.90.

Accordingly, the Court finds that the attorneys' fees and costs in the amount of $15,810.90 is reasonable and awards Radisson Hotels this amount pursuant section 26.13 of the parties' license agreement.

### III. Radisson Hotels' Entitlement to Injunctive Relief

Finally, Radisson Hotels seeks an injunction requiring Fairmont Partners to comply with certain post-termination obligations set forth in section 20.1 of the parties' license agreement. This provision requires Fairmont Partners, among other things, to cease using Radisson Hotels' marks, to cease representing Fairmont Partners' new hotel as a current or former Radisson System hotel, and to cease operating Fairmont Partners' hotel as a Radisson System hotel.

Injunctive relief may be granted if the Court finds that (i) the plaintiff will suffer irreparable harm in the absence of such relief, (ii) the harm the plaintiff would suffer is greater than any harm the injunctive relief may impose on the defendant, (iii) the plaintiff will likely succeed on the merits, and (iv) the public interest favors granting such relief. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Here, Radisson Hotels alleges that there is a high likelihood of confusion in the market if Fairmont Partners does not cease using or associating its new hotel with Radisson Hotels' marks. Thus, without injunctive relief, irreparable harm to Radisson Hotels is presumed, in light of the likelihood of confusion. *See Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011). Moreover, Fairmont Partners will not be harmed by complying with its bargained-for contractual obligations. And the public interest will be well served by such injunctive relief. *See Gen.*

*Mills, Inc. v. Goldman*, 184 F.2d 359, 366 (8th Cir. 1950) ("[T]he highest public policy is found in the enforcement of the contract as it was actually made.").

Because injunctive relief is proper so as to hold Fairmont Partners to its contractual post-termination obligations, the Court grants Radisson Hotels an injunction directing Fairmont Partners to comply with its post-termination obligations as specified in this order.

## ORDER

Based on the foregoing analysis and all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Plaintiff Radisson Hotels International, Inc.'s motion for default judgment, (Dkt. 11), is **GRANTED** as specified herein.

2. The Clerk of Court shall enter judgment in the amount of $370,359.96 against Defendant Fairmont Partners LLC and in favor of Plaintiff Radisson Hotels International, Inc.

3. Defendant Fairmont Partners LLC shall cease using Plaintiff Radisson Hotels International, Inc.'s marks.

4. Defendant Fairmont Partners LLC shall take down, remove, or cause to have taken down or removed any and all advertising materials bearing or using Plaintiff Radisson Hotels International, Inc.'s marks at 4900 Hatch Boulevard, Sheffield, Alabama 35660, or any other location, including internet websites and directory listings.

5. Defendant Fairmont Partners LLC shall transfer the telephone number 256-381-4710 to Plaintiff Radisson Hotels International, Inc.

6. Defendant Fairmont Partners LLC shall comply with all of the post-termination obligations set forth in section 20.1 of the license agreement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 10, 2020

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge